[No. 20797.  In Bank. — September 18, 1891.]

THE PEOPLE, RESPONDENT, v. GEORGE A. JOHN-
SON, APPELLANT.

CRIMINAL LAW — EMBEZZLEMENT — EVIDENCE — IDENTITY OF CULPRIT —
HEARSAY. — Where other evidence as to the identity of the defendant
with the person who committed an embezzlement charged is weak and
unsatisfactory, the admission of hearsay testimony from an officer, as to
the description of the culprit given him by the prosecuting witness be-
fore the arrest of the defendant, is prejudicial error.

ID. — MONEY TAKEN BY EXPLAINER OF LOTTERY — LARCENY — BAILMENT
— FINDING AGAINST ·EVIDENCE. — Where the money charged to have
been embezzled was taken by a professed agent of a lottery company,
who proposed to explain to the prosecuting witness how the drawings
were made, and induced him to make repeated deposits of money upon
a table upon which was placed a paper covered with squares and figures,
promising to return the money as soon as he had explained the drawings,
and who took from the table the amount of each deposit when it was
apparently lost, and fraudulently appropriated the amounts so lost, and
refused to return the money, the crime committed is that of larceny, and
not embezzlement.

ID. — LARCENY DISTINGUISHED FROM EMBEZZLEMENT — POSSESSION — CON-
VERSION IN PRESENCE OF OWNER. — If the owner puts his property
into the hands of another to use or do some act in relation to it in his
presence, he does not part with the possession, and the conversion of it
animo furandi is larceny, and not embezzlement.

APPEAL from a judgment of the Superior Court of
San Francisco County, and from an order denying a
new trial.

The facts are stated in the opinion of the court.

*M. S. Horan,* for Appellant.

*Attorney-General Hart,* and *Deputy Attorney-General
Sanders,* for Respondent.

DE HAVEN, J. — The defendant was charged with em-
bezzlement, and convicted.  He appeals from the judg-
ment, and order denying his motion for a new trial.

1. The court erred in admitting the testimony of the
witness Briggs, as to the description of the defendant
given him by the prosecuting witness before the arrest
of defendant.  This·was hearsay, and, considered with
reference to the other evidence in the case relating to

the identity of defendant as the person who took the money alleged to have been embezzled, was a material error.

2. The verdict is against the evidence, as, upon the facts shown, defendant was guilty of larceny, and nothing else.

The following is the testimony of the prosecuting witness as to the manner in which the defendant obtained his money: "We went in to get a drink, and while we were at the bar a man came up to us and asked us if we would like to buy a Louisiana lottery ticket. I said, No; that I did not care about it, as I never gambled. He said he was the agent of the Louisiana Lottery Company, sent out on purpose to this coast to explain the way the drawings were had to the people, and if we would go into the back room he would explain it. I did not want to go into the back room, but this other man who was with me said, 'Let's go in and see'; so we went in; when we got in the back room there was a table there, and the defendant spread a paper on the table, full of squares and figures, and said if I would put down a half a dollar or some money on the table he would explain it to us. I did not want to put any money on the table, but this other man said he would put in a half a dollar, and so I did the same, and afterwards I put in a dollar; after that was lost I put in five dollars and lost that. I then wanted to get out, but there were other men there who said, 'Go on and play,' and I was afraid to go out, as I put up twenty dollars, and afterwards twenty dollars more. After that was lost I asked for my money, and didn't get it. The defendant at all times told me that I would get my money back as soon as he had explained the game."

It is sometimes difficult to determine upon a trial for larceny whether the offense is larceny or embezzlement, when there has been a bailment of property to the defendant, and thereafter a conversion by him. Upon such facts, when the charge is larceny, the prosecution is required to show that the defendant, when he received the property originally, intended to steal it. But

no such difficulty is presented here, for there never was any bailment of the property, the prosecuting witness never consenting to part with the possession; indeed, even its bare custody for a temporary purpose was not given to defendant; the money was simply placed upon a table on some squares and figures, that defendant and his confederate might illustrate the manner in which the drawings of the Louisiana lottery are had, and all of this was to be done in the presence of the prosecuting witness. He never contemplated or consented that the money should be taken from his sight, or that it should be transferred from the table to the pockets of the defendant. Upon this state of facts, a finding that the possession of the money was intrusted to defendant by the prosecuting witness is entirely without any support, and the crime which defendant committed is described with absolute precision in *Loomis* v. *People*, 67 N. Y. 327; 23 Am. Rep. 123. "It was a clear case of larceny, as marked and significant in its general features as if the prisoners had wrongfully seized and appropriated it when first produced."

In the case of *Commonwealth* v. *O'Malley*, 97 Mass. 585, the defendant was convicted of embezzlement, upon the following state of facts: The prosecuting witness had thirty-eight dollars in bank bills; the defendant asked her to loan him a dollar, and she agreed to do so, and showed him the roll of bills, which she had just received in payment of her wages; he then asked her to let him take the money and count it, she not being able to read or write, and she let him take it for that purpose; he counted it over several times in her presence, and then refused to return it to her, and went off with the money. The trial court instructed the jury as follows: "If they were satisfied that the defendant, when he took the bills from the hands of the witness McDonald, had the guilty intent of entirely depriving her of them, and of converting them to his own use, and his taking the money to count was only a trick or device to obtain possession of the same, it would be larceny, and they must acquit him;

but if they were satisfied, beyond a reasonable doubt, that he had no such intent at the time, but received the bills by her permission, for the purpose of counting them for her and receiving the dollar which she had consented to loan him, and after the money came into his hands, he then first conceived the guilty purpose of defrauding her, they might find him guilty." The conviction for embezzlement was set aside by the supreme court, in an opinion which states with great clearness the distinction between larceny and embezzlement. The court there said: "We are of opinion that there was no evidence to sustain the indictment for embezzlement, and that the conviction was wrong. . . . . To constitute the crime of embezzlement, the property which the defendant is accused of fraudulently and feloniously converting to his own use must be shown to have been intrusted to him so that it was in his possession, and not in the possession of the owner. But the facts reported in the bill of exceptions do not show that the possession of the owner of the money was ever divested. She allowed the defendant to take it for the purpose of counting it in her presence, and taking from it a dollar which she consented to lend him. The money is alleged to have consisted of two ten-dollar bills, three five-dollar bills, one two-dollar bill, and a one-dollar bill, amounting in all to thirty-eight dollars. The one dollar he had a right to retain, but the rest of the money he was only authorized to count in her presence and hand back to her. He had it in his hands, but not in his possession, any more than he would have had possession of a chair on which she might have invited him to sit. The distinction pointed out in the instructions of the court, between his getting it into his hands with a felonious intent, or forming his intent after he had taken it, was therefore unimportant. The true distinction, upon principle and authority, is that stated by the cases upon the defendant's brief, that if the owner puts his property into the hands of another, to use or do some act in relation to it, in his presence,

he does not part with the possession, and the conversion of it *animo furandi* is larceny."

The law as thus declared is sustained in the following cases: *Smith* v. *People*, 53 N. Y. 111; 13 Am. Rep. 474; *Loomis* v. *People*, 67 N. Y. 322; 23 Am. Rep. 123; *People* v. *Call*, 1 Denio, 120; 43 Am. Dec. 655; and many more which might be cited to the same effect. Indeed, our attention has not been called to any case which holds to the contrary.

Judgment and order reversed.

HARRISON, J., PATERSON, J., SHARPSTEIN, J., and GAROUTTE, J., concurred.

McFARLAND, J., concurring. — I concur in the judgment of reversal for admission of improper testimony, but I dissent from the view that the crime was necessarily larceny, and not embezzlement.

It is contended by appellant that under the evidence he could not have been legally convicted of embezzlement, because the evidence, if it shows any crime, shows the crime of larceny, and not embezzlement.

The distinction between larceny and the statutory crime of embezzlement is sometimes hard to draw. Our code definition of the latter offense is very broad, being, "the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen. Code, sec. 503.) The weight of the definition rests upon the word "intrusted." Where the property is taken forcibly or furtively, or when the possession is gained by a trick or artifice, and the owner had no intent to yield possession and "intrust" the property to another, — in such cases there is no embezzlement. Now, appellant argues this case upon the theory that the prosecuting witness laid his money on a table upon the representation of appellant that he merely wanted to point out and explain a certain lottery or game, and that when the money was put there, appellant suddenly took it without the consent of said witness. But the testimony does not clearly show such a state of facts. It is true that the witness

says, generally, that defendant told him that he would get his money back; but he testifies that he first put in a half-dollar, " and afterwards I put in a dollar, and after *that was lost* I put in five (5) dollars and *lost that.*" He then " wanted to get out," but was induced to " go on and play," and he " put up " $20, and $20 more, and so on, until he had put up altogether $86.50; and then, as he says, " *after that was lost* he asked for his money, but did not get it, except $10, which was returned to him." What became of the coins, as one by one they were bet and lost? I think that the jury had the right to find that appellant, with the consent of the prosecuting witness, had full actual possession of the money; and whether it was " intrusted " to him was, I think, under all the circumstances, a question to be determined by the jury, under proper instructions of the court. And I see no error in the instructions on that point.

The bill of exceptions in this case is so meager that we can hardly suppose it to contain all the evidence upon the points contested. In *People* v. *Fisher*, 51 Cal. 319, it was held that in a bill of exceptions in a criminal case it is not necessary "to specify the respects in which the evidence is alleged to be insufficient to sustain the verdict." Under this rule, district attorneys are no doubt often misinformed as to what points the bill of exceptions should, by amendments, be made full; and an amendment to the code, requiring specifications of the grounds of the alleged insufficiency of the evidence, would be in furtherance of justice.

BEATTY, C. J., concurring. — I concur in the judgment of reversal upon the ground that the superior court erred in admitting the testimony of the witness Briggs. The evidence of the prosecuting witness that the defendant was the person who defrauded him was extremely weak and unsatisfactory. He admitted that on the examination of the prisoner in the police court, a short time after the occurrence, he had been unable to identify him, but claimed that he was then (at the trial) certain that he

was the same person.   Evidently the prosecution thought
it necessary to strengthen their case on this point, for
they called the witness Briggs, — an officer, — who was
permitted to testify, against the objection of the defend-
ant, to a description of the culprit, which he stated had
been furnished by the prosecuting witness before the
defendant was arrested. , This was of course hearsay, and
incompetent, and as it related to a vital issue in the case,
upon which other sufficient testimony was lacking, it
was necessarily prejudicial.

But I dissent altogether from what appears to me the
extremely technical views of the  ꞏurt as to the insuffi-
ciency of the evidence to sustain th, verdict.

I admit that the evidence proves a clear case of larceny,
but I cannot concur in the conclusion that because it
proves larceny it does not prove embezzlement.

Assuming the defendant to have been properly identi-
fied as the real culprit, the evidence shows that he fraud-
ulently induced Wilkins to put his money on a table for
the purpose of illustrating the mode of playing a game
which he called the Louisiana lottery, promising to give
it back at the conclusion of the lecture.  In pursuance of
this plan he first illustrated the loss of a half-dollar, next
a dollar, then of five dollars, and finally of four twenty-
dollar pieces in rapid succession.   After this brilliant
exposition of the beauties of the game, when Wilkins
demanded his money back, according to the understand-
ing upon which he had permitted the use of it, he was
coolly informed by the defendant that the Louisiana lot-
tery did not do business in that way, and that if the
money was returned they would surely put their busi-
ness in other hands.   Defendant did, however, magnani-
mously restore the sum of ten dollars when Wilkins
threatened to call for the police.   In short, the evidence
leaves no room to doubt that the defendant intended
from the beginning to make a felonious appropriation of
the money, and the case cannot be distinguished in prin-
ciple from that of *People* v. *Rae*, 66 Cal. 423, 56 Am.
Rep. 102, in which it was held that the facts constituted

the crime of larceny. On the authority of that decision, it must be held, as appellant contends, that the evidence in this case made out a clear case of larceny. But does it follow that it will not sustain a conviction of embezzlement?

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen. Code, sec. 503.)

According to this definition, a fraudulent intention to appropriate the property at or before the time of its receipt is not *necessary* to constitute the offense, but it is in no wise *inconsistent* with it. It merely superadds an ingredient not essential to constitute the crime. But is it any the less embezzlement because it is that and something more? Or rather, will not evidence which proves every element of the crime of embezzlement sustain a conviction of that crime merely because it proves the additional element contained in the crime of larceny?

Under an indictment for murder the defendant may be convicted of manslaughter, because the offense of manslaughter is embraced in murder; i. e., murder is manslaughter, with the added ingredient of malice aforethought. Upon the same principle it cannot be doubted that under an indictment for larceny, specifically alleging the facts proved in this case, the defendant could properly be convicted of embezzlement, if upon the evidence it was reasonably doubtful whether the fraudulent intent existed at the time he received the money. (Pen. Code, sec. 1159.)

The converse of these propositions must be equally true.

Upon an indictment for manslaughter, a verdict of guilty is sustained by the evidence, notwithstanding it may appear that the killing was malicious; and if so, an information for embezzlement is sustained by the evidence, notwithstanding it may appear that the crime committed was all of embezzlement and something more.

Of course, if larceny were an offense of lesser grade, or subject to a lighter penalty than embezzlement, the

conclusion would be different; but they are in fact of the same grade, and subject to precisely the same punishment. (Pen. Code, sec. 514.)

The particular kind of larceny proved in this case consists of three elements: 1. Money intrusted; 2. Fraudulent conversion; 3. Intent to defraud at the time the money is received. Embezzlement consists of two elements: 1. Money intrusted; 2. Fraudulent conversion. That is to say, the two crimes are identical as to the first two ingredients. But it is held by the court that embezzlement is not proved, although both its elements are proved, because another element is proved which brings the offense within the definition of larceny; in other words, that because the defendant might have been charged and convicted of a higher crime, he cannot be convicted of a lesser crime embraced in that which might have been charged.

But the court holds that here there was never any "bailment" of the property. Possibly this is so, if the matter is regarded with reference to the civil rights and remedies of the parties. But the statute defining embezzlement does not speak of a *bailment*. It only requires that property should be "intrusted" to another, and, in my opinion, it does not lie in the mouth of a thief who has in fact been trusted, in ignorance of his character and intentions, to say that because he obtained possession of the property by a fraudulent trick, therefore he was not intrusted with it.

I am aware that many cases may be found, like those cited in the opinion of the court, in which the facts proved in this case have been held to constitute larceny; but, as I have endeavored to show, they also include embezzlement. The Massachusetts case is the only one that has ever been brought to my attention in which it has been decided that proof of the higher offense, or proof of the three ingredients of larceny, will not *support* a conviction of a crime composed of two of those ingredients.

That decision may be accounted for by the fact that

XCI. CAL.—18

the defendant had been once acquitted on an indictment for larceny founded on the same facts afterwards proved on the trial for embezzlement; and it seems to have been assumed that the change made in designating the offense in the second indictment would prevent him from having the benefit of a plea of former acquittal. If this was so under the Massachusetts practice, it affords a ground of support to the decision which has no existence here.

Under our law and practice, such fine-spun distinctions serve but one purpose. They do not tend in the slightest degree to shield the innocent, but only to furnish an additional loop-hole of escape for the guilty.