Paterson, J.
The defendant was convicted of the crime of grand larceny, and sentenced to serve a term of four years in the state prison at San Quentin.
His counsel claim on this appeal that if any offense is shown by the evidence it is embezzlement and not larceny. The information is in the language of the statute defining larceny, charging that he did “ feloniously steal, take, and carry away $150 of the lawful money of the United States.”
The testimony of the prosecuting witnesses, Claxton and wife, shows that on December 21, 1892, they found *21 an advertisement in a San Francisco newspaper which read as follows: “ Steady men wanted to collect and wait on customers in pleasant cash business. Short hours and light work. No experience necessary. Must have $150 cash, and be satisfied witli $70 per month. Apply No. 7 Grant avenue, .room 2.” Following the direction of the advertisement Claxton went to No. 7 Grant avenue, and there met a man who took him to the defendant’s office, No. 777 Market street. The defendant stated to him that he wanted a man to look after the office and wait on customers, and that he would have steady work. The advertisement was referred to in the conversation. The defendant told him he could have the position at $70 dollars per month, but he would be required to give him $150 dollars as security, J as there was a great deal of money to be handled in the business. Thereupon Claxton gave the defendant the $150, who wrote and delivered to the former a receipt in the following words: “ Received from William Claxton $150, as security deposit on situation. Salary, $70 per month. J. H. Tomlinson.” At the same time the defendant, without request therefor, gave Claxton a i promissory note for the sum of $150, payable sixty days after date. The reason given by the defendant for requiring $150 security was that a previous employee who had given no security had embezzled and run away with $700, which he had collected. The defendant stated to the prosecuting witness that he was obliged to have a man, as he had more business than he could attend to himself, and, for anybody who could put up the security, it would be a good job; that it would be outside work for a week or.so until he got the run of the business, and then it would be inside work. Claxton testified that he did not know the party who went with him to the defendant’s office from No. 7 Grant avenue, but had seen him repeatedly since in Tomlinson’s office, “ sitting at the desk, or sitting with Tomlinson, or around there.” On or about January 12th defendant informed Claxton that business was very dull, and that he would *22 have to “ lay him off” until the first of the month. All the defendant paid Claxton on account of wages was $11, and of the $150 all that has been returned to him is the sum of $20, paid after his discharge. Mrs. Claxton tes(tified that the defendant said if her husband did not j, like the position, or should be discharged, the $150 l would be returned to him. There are other circumstances which need not be related, tending to show that the defendant was not acting in good faith. One act in particular, which goes to show that he did not discharge Claxton because he had no work for him, was a communication written by him to one Switzer, replying to a letter dated January 20, 1892, inquiring about a position mentioned in an advertisement inserted in one of the San Francisco newspapers by the defendant, saying ¡that he wanted a clerk, at $70 a month, with $150 cash | deposit, the applicant to apply at 777 Market street.
Enough of the evidence has been stated, we think, to show that the prosecutor was induced to place his , money in the hands of the defendant upon the "assurance that he would have permanent employment, and that the defendant and his confederate conspired feloniously to procure the money of Claxton and convert it to their own use. The only question is whether, upon the facts proved, a case of larceny has been established.
It is said that the verdict cannot stand because ClaxI ton voluntarily parted with his money and took a promissory note in lieu thereof, but the jury were justified in believing that defendant’s voluntary presentation of the note was a mere trick to get possession of the money. The circumstances all show that Claxton did not intend | to part with the ownership of the money. It was put in 'the hands of the defendant as security for the faithful performance of the services to be rendered. When (Claxton was discharged it was the duty of the defendant I to return the money to him. The giving of a worthless note was doubtless a mere cover—a device or contrivance to hide the real design. As Claxton did not intend to part with the money absolutely, but turned it over to *23 the defendant for temporary use and a specific object, the taking of the money with the intent to steal it at the time it was taken was larceny. On the facts there must often be a very narrow margin between cases of, larceny, obtaining money by false pretenses, and embezzlement, because the character of the crime depends upon the secret intention of the parties, which is often difficult to ascertain; but, so far as the law is concerned, the principles upon which the question of guilt or innocence is to be determined are plain,<and too well settled to justify a review of the authorities." Where one honestly receives the possession of goods upon a trust, and after receiving them fraudulently converts them to his ■own use, it is a case of embezzlement. If the possession has been obtained by fraud, trick, or device, and the ■owner of it intends to part with his title when he gives up possession, the offense, if any, is obtaining money by false pretenses. But, where the possession has been obtained through a trick or device, with the intent, at the time the party receives it, to convert the same to his own use, and the owner of the property parts merely with the possession and not'with the title, the offense is larceny. It was'a question for the jury to decide in this case whether the defendant feloniously took the money, and whether Claxton intended to part with the ownership of the same. (People v. Raschke, 73 Cal. 378; People v. Johnson, 91 Cal. 265; People v. Laurence, 137 N. Y. 517; Commonwealth v. Lannan, 153 Mass. 287; 25 Am. St. Rep. 629.)
The court did not err in admitting in evidence the advertisement referred to. The wages paid and the security required by the defendant were the same as those mentioned in the card, and the party who was named in the advertisement as the one to apply to, took the applicant to the defendant, and appears to have been thereafter closely associated with him. Under these circumstances the jurors were justified in believing that the act of one was the act of both.
It is claimed that the verdict ought to have been set *24 aside because of a variance between the allegations of the information and the proof as to the ownership of the property taken. It was alleged in the information that the property belonged to William Claxton. The evidence shows that the monej' came to Mrs. Claxton as her separate estate, but that she gave it to her husband to enable him to provide the security required by the defendant. Irrespective of this, however, the contention cannot be sustained. (People v. Nelson, 56 Cal. 77; 6 Pac. Coast L. J., 453; State v. Pettis, 63 Me. 124; Dignowitty v. State, 17 Tex. 521; 67 Am. Dec. 670.)
The court did not err in permitting the prosecution to introduce the letter written to Switzer. It tended directly to impeach defendant’s claim of good faith in discharging the prosecuting witness, and the fact that it may have tended to show the commission of another offense by the defendant is immaterial. (People v. Lane, 101 Cal. 513.)
Objection is made to that portion of the charge to the jury wherein the court said: “ Now, the law is that when, by means of fraud or artifice, or any other kind of contrivance, the possession of property is fraudulently obtained .... from another, and the party obtaining this possession acquires it by means of this fraud and artifice, with the intention of stealing it when he gets possession of it, then the crime is larceny, provided the owner of the property who has thus deposited and loses its possession, still remains the owner of the property and has not parted with his title.” It is said the court erred in not using the word “ felonious” before the word “ stealing.”
The word “steal” in common, as well as in legal parlance, imports a larceny, and, when used in connection with property which is the subject of larceny, means the felonious taking. The State v. Chambers, 2 G. Greenl. 311; People v. Robertson, 3 Wheel. C. C. 181; People v. Raschke, 73 Cal. 378, cited by the appellant, does not support his contention. The instruction therein criticised and held erroneous did not make use of the word *25 “ steal,” but in lieu thereof the words “ intended to convert them to his own use, and did so convert them.” Mr. Justice McFarland particularly pointed out that “ nowhere in the instructions on that point were the jury told that the appellant at the time possession of the goods was obtained must have had a ‘ felonious intent,’ nor was any language used which was the equivalent of felonious intent, or which conveyed the idea of stealing.” In People v. Urquidas, 96 Cal. 241, a ease of burglary, it was claimed that the words “stole” and “stealing” are not equivalent to the word “larceny,” but it was -held that if the defendant entered a barn “ with the intention'of stealing hay therein,” he entered “ with the intent to commit grand or petit larceny.” In People v. Mitchell, 92 Cal. 592, a case of forgery, it was claimed that the indictment was defective because the word “ falsely”—a word used in the statute defining the crime of forgery—was not used before the word “forge.” But Mr. Justice Garoutte, in the main opinion, said: “The words ‘forge,’ ‘forger,’ and ‘forgery,’ when used in law have no honest meaning, but imply fraudulent deceit.”
The instructions complained of are not, in our opinion, fairly obnoxious to the criticisms put upon them by counsel for the defendant. We do not think that the jury could have construed the language of the court as an intimation on its part that the defendant was guilty of fraud, or that in its opinion the publication referred to was made for the purpose of fraudulently obtaining the money of others.
There is no merit in the claim that the court erred in not excluding the jurors from the courtroom during the argument on motion for a nonsuit. The court does not, in overruling such motions, intimate to the jury any opinion of the guilt or innocence of the defendant, and there is no provision of the law requiring the exclusion of the jury on such occasions. It is for the court always in its discretion to say whether the inter *26 ests of the parties demand that the jury should not hear the argument on a motion for a nonsuit.
The judgment and orders appealed from are affirmed.
Garoutte, J., and Harrison, J., concurred.
Hearing in Bank denied.