**8**

[Crim. No. 14054.   Second Dist., Div. One.   June 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLIE WING CHUNG, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with burglary (§ 459, Pen. Code) and two prior felony convictions (sale of heroin and robbery) for which he served terms of imprisonment. A jury returned a verdict of guilty of second degree burglary and found the alleged priors to be true. Defendant appeals from the judgment.

Around midnight on March 9, 1967, a clerk locked the premises of a liquor store and set a silent burglary alarm; he

left nickels, pennies and a wrist watch in the cash register. Around 2:50 a.m. pursuant to a radio call from a silent burglary alarm, Officers Petroski and Whitaker proceeded to the liquor store. Officer Petroski walked up to the side of the plate glass window and looked inside; he saw defendant standing behind the cash register looking straight down at the cash drawer. The officers drew their revolvers and tapped on the glass window; defendant looked up, turned slowly and walked hurriedly toward the rear of the store, then ran from the building; the officers took chase. Officer Petroski ordered defendant to halt but he continued to run and the officer fired one shot missing him. Defendant dove into a junked van. Officer Whitaker opened the rear door and saw defendant crouched in the back of the truck; he ordered defendant out but he did not move; Officer Whitaker grabbed him and as he started to pull him out, defendant lunged at him causing him to stumble backwards; then he hit defendant with his fist subduing him and placed him under arrest. Officer Petroski searched defendant and found in one of his pockets the coins and watch wrapped with a piece of paper; Mr. Moser, an owner of the liquor store, identified the watch as being the one he had left in the cash register. Upon entering the store Moser observed the back door had been forced and noticed the watch and nickels were missing from the cash register.

In his defense defendant testified that he had been released from a hospital around 9 p.m. and had gotten on a bus; the bus driver let him off at the wrong place; around 9:30 he started walking and became dizzy as he had heart trouble and asthma and about 11 p.m. saw a panel truck; he did not want to pass out on the sidewalk so he entered the truck and fell asleep. Around 3 a.m. he was awakened by an officer who said, "You are the man in the store"; he said, "I am not no burglar"; the officer punched him and broke his jaw; he did not try to hit the officer and did not lunge toward him; he did not know anything about the liquor store, did not enter it and did not have a watch or any money on his person when arrested.

Appellant claims that it was error for the court not to instruct the jury that to constitute burglary one must enter the structure of another not only with intent to carry away the property of another but to permanently deprive the owner of his property. The court instructed the jury that to find defendant guilty of burglary it must find that he had "the specific intent to steal, take and carry away the property of

another, and unless such intent so exists that crime is not committed."[1]

Section 459, Penal Code, provides: "Every person who enters any . . . store . . . with intent to commit grand or petit larceny . . . is guilty of burglary."

In *People* v. *Urquidas*, 96 Cal. 239 [31 P. 52], defendant was convicted of the crime of second degree burglary. He was charged with entering a barn with intent to commit larceny. The evidence showed that entry into a barn was made by defendant early in the morning with the intent to steal hay. One of the instructions told the jury, " 'If you believe from the evidence, beyond a reasonable doubt, that defendant entered the barn of witness Beale, as charged in the information, with the intention of stealing hay therein, then the offense of burglary would be complete, whether the defendant actually stole hay or not, nor would it make any difference how defendant effected his entrance into the barn in question.' " (Pp. 240-241.) Said the court at page 241: "It is claimed that the instruction was erroneous, and it is said: 'The jury were not given the legal definition of "burglary" in any instruction, unless it be in this one. The words "stole" and "stealing" are not equivalent to the word "larceny," and where the court attempts to define the crime, the words, or equivalent words, of the code must be used. The words "stole" and "stealing" are not .equivalent thereto, hence prejudicial error is assumed.'

"We see no merit in this point. If the defendant entered the barn 'with the intention of stealing hay therein,' he

---

[1] "Every person who enters any structure such as is shown by the evidence in this case, with intent to unlawfully steal, take and carry away the personal property of another, of any value is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out.

"If you find the defendant guilty of burglary, I instruct you that it is burglary in the second degree as a matter of law.

"In a crime such as that of which defendant is charged in the information, there must exist a union or joint operation of act or conduct and a certain specific intent.

"In the crime of Burglary, there must exist in the mind of the perpetrator the specific intent to steal, take and carry away the property of another, and unless such intent so exists that crime is not committed.

"The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in this case unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to steal, take and carry away the property of another but are irreconcilable with any other rational conclusion."

entered 'with intent to commit grand or petit larceny,' and the jury must have so understood it.''

In *People* v. *Tomlinson,* 102 Cal. 19, the court at page 24 [36 P. 506] said: ''The word 'steal' in common, as well as in legal parlance, imports a larceny; and, when used in connection with property which is the subject of larceny, means the felonious taking.'' While *Tomlinson* involved embezzlement, false pretenses and larceny, the court relied in part on *People* v. *Urquidas,* 96 Cal. 239 [31 P. 52], a case of burglary; ''it was claimed that the words 'stole' and 'stealing' are not equivalent to the word 'larceny,' but it was held that if the defendant entered a barn 'with the intention of stealing hay therein,' he entered 'with the intent to commit grand or petit larceny.' '' (P. 25.) In the light of the foregoing and all of the instructions given, we conclude that the jury was properly instructed relative to the specific intent necessary for the crime of burglary.

Appellant relies upon *People* v. *Brown,* 105 Cal. 66 [38 P. 518]. Defendant therein admitted entry into a house and the taking of a bicycle. His defense was that he took it to get even with the owner and he did not intend to keep it and intended to return it that evening. The court held that ''Upon the foregoing state of facts'' the trial judge erred in giving an instruction that larceny might be committed, even though it was only the intent of the party taking the property to deprive the owner of it temporarily. (P. 69.) Assuming that the trial court committed error in failing to instruct that to find defendant guilty the jury must find that he entered the premises of another with intent to permanently deprive that person of his personal property, appellant cannot show prejudice to justify a reversal. His defense was not that he did not take the nickels, pennies and wrist watch with intent to permanently deprive the owner thereof, but that he did not know anything about the liquor store, did not enter it, did not take anything therefrom and when arrested did not have the watch or any money on his person.

The judgment is affirmed.

Wood, P. J. and Fourt, J., concurred.