## Sayre v. Commonwealth.

(Decided March 24, 1922.)

### Appeal from Fayette Circuit Court.

Criminal Law—Unskillful and Incompetent Counsel for Defendant —Motion for New Trial.—A defendant cannot after employing counsel to represent him in a trial stand silently by and allow his counsel to present a false defense or make a false plea, and after the trial is over and he is convicted, throw himself upon the mercy of the court and obtain a new trial because of the fraud, incompetency and unskillfulness of his attorney, for it was the duty of the defendant to present a true defense and to complain to the court at the time if he was not satisfied with the manner in which his counsel was conducting the trial, and thus give the trial court

an opportunity to intervene and assign ther counsel or make such order as the exigencies of the case may demand.

MILLER & MILLER for appellant.

CHARLES I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

After the return of the verdict of death against appellant Ferdinand Sayre by the jury the court pronounced and entered the following judgment: "It is adjudged by the court that the defendant be conveyed as expeditiously, privately and safely as may be, by the sheriff of Fayette county, to the state penitentiary in the town of Eddyville, Kentucky, where said defendant shall be received by the warden of said penitentiary, and there safely kept until Friday, the 22nd day of July, 1921, on which day before sunrise, within the walls of said penitentiary, and in such enclosure as will exclude public view thereof, the warden of said penitentiary, or his deputy, shall cause to pass through the body of said defendant a current of electricity of sufficient intensity to cause death as quickly as possible, the application of which current shall be continued until the defendant is dead," from which judgment this appeal is prosecuted.

The indictment charges Sayre with the wilful murder of James McHatton, a soft drink and grocery merchant of the city of Lexington. On the trial he pleaded that he was not guilty as charged in the indictment, although he admitted he fired the shot which took the life of McHatton, but insisted that he did so only because McHatton was then about to and was in the act of shooting appellant, to avert which danger appellant shot and killed McHatton. On the trial appellant was represented by counsel selected and employed by himself and father. After the verdict this attorney filed in open court a motion and grounds for a new trial. Before this motion was acted upon by the court and immediately following the filing of it, appellant Sayre discharged his lawyer and addressed a letter to Hon. Richard C. Stoll, the judge who presided at the trial, informing the court that appellant had discharged his attorney and had placed the matter of engaging new counsel with his father and mother. Thereupon the court struck the name of Sayre's original counsel from the record. Soon thereafter his present counsel, Miller & Miller, appeared and moved the court to allow

them to withdraw the original motion and grounds filed for appellant by his original counsel and to substitute in lieu thereof other grounds for a new trial, which motion was sustained and counsel filed a motion containing twelve alleged reasons why the judgment should be set aside and appellant granted a new trial. As there is no apparent foundation for any of said grounds except numbers two, eleven and twelve, and as his present counsel insist upon no other, it will be unnecessary for the court to consider or discuss the other nine formal grounds. The three grounds to which we will direct out attention read as follows:

"(2) Because the court erred in admitting incompetent evidence offered by the Commonwealth, to which ruling of the court the defendant at the time objected and excepted and still excepts.

"(11) Because at the trial of said case there developed a political controversy between the defendant's counsel and the counsel for the Commonwealth, concerning which the defendant was in no way responsible, and did not sanction, but which materially injured him, and prejudiced the minds of the jurors against him.

"(12) Because his substantial rights were injured by reason of the defense offered for him, which defense he did not sanction and which defense was not the proper or the correct defense or the defense in the case."

It is said in brief of counsel for appellant that the extreme penalty meted out to appellant Ferdinand Sayre by the jury is due in large part to the unskillful, negligent and grossly incompetent manner in which his defense was conducted by his lawyer. This is the entire burden of the brief, the gist of the argument. In support of the assertion that counsel representing appellant was grossly incompetent it is said that he advised and caused appellant to enter a plea of self-defense when that was not the true or real defense which he had to the indictment, but that he should have pleaded that at the time he fired the shot which took the life of McHatton, appellant was so drunk that he did not know what he was doing and was not accountable for his act. With the motion and grounds for a new trial and in support of it, are filed five or six separate affidavits of persons who depose in substance as follows: That affiant is acquainted with Ferdinand Sayre; that he saw him on the night on which he shot and killed James McHatton only a short time before the killing; that at the time affiant saw Sayre appellant was in a

drunken condition and did not seem to understand or
know what he was doing or where he was going. Each
of the affiants also expressed the opinion that Sayre was
so drunk that he was not responsible for his act. Sayre
files an affidavit in which he says that he was very drunk
at the time he shot McHatton and did not know what he
was doing and that this, and not self-defense, is his true
defense. On the trial he testified that while he was drink-
ing he was not drunk but knew and understood what he
was doing and remembered all the details. He says in
his affidavit, however, that he testified on the trial that
he was not so drunk as to be unconscious of what he was
doing because his counsel advised him to do so, although
he knew such testimony was false.

As another fact tending to show that counsel for ap-
pellant was incompetent and unfit to conduct the defense
of appellant it is pointed out that during the trial a rule
was issued against one Foley Robison, a witness for ap-
pellant, accusing the said Robison of attempting to sup-
press evidence against appellant and to intimidate a wit-
ness for the Commonwealth. Robison was arrested in
court in the presence of the jury and taken into the
prisoners' dock. An examination into the charge against
Robison was had in chambers out of the presence of the
jury. When the witness whom it was charged Robison
had attempted to intimidate came on the stand to testify
against appellant, questions were asked her on cross-ex-
amination by counsel for appellant which entitled the
attorney for the Commonwealth to inquire of her to whom
she had talked concerning the case; to this she answered
that she had talked to Foley Robison. Other questions
looking to the nature of the conversation between the wit-
ness and Robison were then propounded by the attorney
for the Commonwealth to the witness, to one of which
questions counsel for appellant objected, which objection
was overruled and exception saved. No other objection
was made by counsel to other questions intended to de-
velop the fact that Robison at the instance of counsel for
appellant had attempted to intimidate the witness and to
cause her to suppress her testimony by claiming she had
forgotten, or by concealing herself so that the officers
could not find her in time for the trial. In course of the
examination, the witness said that Robison had told her
that he had come to see her as the representative of coun-
sel for appellant. In the meantime the circuit judge in an
effort to protect the rights of appellant had sustained

supposed objections to questions propounded by the attorney for the Commonwealth without the attorney for the defendant making such objections. Finally counsel for appellant announced to the court and the jury, "I will withdraw my objections. We are going into this whole matter." Thereafter, on cross-examination counsel for appellant did not go into the entire matter, to the great injury of his case, all of which could have been averted by skillful management of the case. All this was very prejudicial to appellant because it brought before the jury prominently the fact that counsel for appellant had sent Foley Robison to see witnesses for the Commonwealth to induce them either to conceal themselves or to suppress their evidence against appellant.

There are many other things in the record which indicate that counsel for appellant at the trial represented him very unskillfully. Indeed, we are persuaded that appellant's defense would have been as well presented had he had no attorney at all.

The overwhelming seriousness of the penalty imposed by the jury upon appellant has caused this court to examine the record with great care to determine whether there was committed against him any error of such seriousness or prejudice to his legal rights as would warrant us in reversing the judgment and in granting him a new trial. We can find no reason save that which is relied upon in brief of counsel for appellant—the unskillfulness and incompetency of his counsel who conducted the trial, and it remains to be determined whether such grounds justify a reversal of the judgment. While counsel for appellant urge this court to reverse the judgment on account of the unskillfulness and incompetency of appellant's counsel, they fail to cite a single authority which would justify us in so doing. In a few instances only in the annals of criminal jurisprudence have courts granted new trials in criminal cases because of the incompetency of counsel who are selected by and represented the defendant. This court has never done so. We have refused to grant a new trial to a murderer receiving the death penalty in a case where it was charged that his counsel in the trial was incompetent and unskillful in the management of his defense because of drunkenness. O'Brien v. Commonwealth, 115 Ky. 608. Many other similar instances could be cited. The general rule seems to be that negligence, unskillfulness or incompetency of counsel is imputed to the client and the client is bound thereby because the act

of the counsel is the act of the client. When a defendant selects an attorney to represent him in presenting his defenses to a court and jury the counsel is received by the court as the representative and spokesman of the client, and said counsel is supposed to and in legal contemplation does become the mouthpiece and other self of his client by which the client is forever bound unless the client at the time manifests to the court his objection or want of concurrence in the procedure or statement which the counsel is pursuing or making. In other words, a defendant cannot, after employing counsel to represent him in a trial, stand silently by and allow his counsel to present a false defense or make a false plea and after the trial is over and he is convicted, throw himself upon the mercy of the court and obtain a new trial because of the fraud, incompetency or unskillfulness of his attorney, for it was the duty of the defendant at the trial to present his true defense—not a false one—and to complain to the court at the time if he was not satisfied with the manner in which his counsel was conducting the trial and thus give the trial court an opportunity to intervene and assign to the defendant other counsel or make such order as the exigencies of the case may demand. 16 Corpus Juris 1145.

In discussing the question of the right of a defendant in a criminal case to a new trial on account of the negligence or want of skill of his attorney the Supreme Court of Missouri in the case of State v. Dreher, said: "But we are not to be understood as consenting that even if there had been negligence or want of skill it would have afforded any ground for reversal. The neglect of an attorney is the neglect of his client in respect to the court and his adversary. The decisions are too numerous to cite, but their uniform tenor is to the effect that neither ignorance, blunders nor misapprehensions of counsel not occasioned by his adversary is ground for setting aside a judgment or awarding a new trial. Field v. Matson, 8 Mo. 686; Behrke v. Jod, 50 Mo. 522. The rule is founded upon the wisest public policy. To permit clients to seek relief against their adversaries upon the alleged negligence or blunders of their own attorneys would open the door to collusion and would lead to endless confusion in the administration of justice. The business of the courts cannot be conducted on any other terms than that parties must be held by the acts of their attorneys in their behalf in causes in which they are authorized to appear,

and in the absence of fraud leaving the client to his remedy against the attorney for his negligence.'' After a most laborious search we have found but one case in which an appellate court has reversed a sentence or judgment on the ground of the negligence or incompetency of an attorney. That case is State v. Jones, 12 Mo. App. 93. In that case no authority was found upon which to base the ruling and we cannot find that it has ever been followed in this or any other state.'' The rule is stated in the case of State v. Lewis, 9th Mo. Appeal, page 322, where the court said:

''As a general rule, parties are held to a strict responsibility for the acts or omissions of their attorneys. To this technical rule there must be some exceptions in extreme cases. . . . Men must not be murdered by technicalities. It is possible, in the present case, that the acts and omissions of the defendant's attorney resulted from nothing more than mere negligence or inattention, such as the client should be bound to, with all its consequences, in an attorney of his own selection.'' The rule is also stated by the Supreme Court of Iowa, in the case of State v. Benge, 61 Iowa 662, the court saying:

''The incompetency of an attorney does not ordinarily constitute a ground for a new trial. In civil cases the rule may be regarded as almost invariable. Boston v. Haynes, 33 Cal. 31; Farmers L. & T. Co. v. Bank, 23 Wis. 249; Burton v. Hynson, 14 Ark. 32; Burton v. Wiley, 26 Vt. 430. In criminal cases, and especially in cases involving the life of the defendant, the court would probably be justified in adhering to the rule somewhat less strictly. State v. Jones, St. Louis Court of Appeals, May No. 1882 Western Jurist, 322. But in any case, to justify a reversal upon this ground, there should be a strong showing both of incompetency and prejudice.''

A defendant who is *sui juris* cannot complain after the trial for the first time that he selected the wrong lawyer to represent him at his trial. If his attorney is unwilling to present his true defense or proposes to offer a false defense or to do anything which to the defendant appears at war with the facts, with good faith and fair dealing, it is the defendant's duty then to appeal to the court on whom he has a right to rely for protection.

If he fails to do so before the trial is concluded so as to give the trial judge an opportunity to assign him counsel, stop the proceedings and impanel a new jury or take such steps as will insure the defendant a fair trial, the

acts of his counsel will be imputed to the defendant, who will be regarded as sanctioning the proceedings and concluded thereby.

For other cases bearing upon the question see: State v. Swayzee, 30 La. Ann. 1323; Roper v. Territory, 7 N. M. 256; State v. Dreher, 137 Mo. 11; State v. Bethune, 93 S. C. 195; People v. Blevins, 251 Ill. 381; Ann. Cases 1912C 451.

We do not regard the alleged political controversy which is stated in ground No. 11 as having arisen between counsel for appellant and the attorney for the Commonwealth in the trial, as borne out by the record, or of sufficient importance or consequence to have influenced the trial court to grant appellant a new trial. If there was such political controversy between counsel it, too, must be charged to want of diplomacy and skill on the part of appellant's counsel.

The incompetent evidence of which complaint is made in ground No. 2 was brought out by counsel for appellant, by whose act appellant was bound, another instance of his want of skill and tact. The trial court, zealous to afford appellant a fair and impartial trial, objected for appellant to some of the incompetent questions propounded by the attorney for the Commonwealth, but counsel for appellant announced to the court that he withdrew his objection to the evidence and asked to be permitted to go into the whole affair, all of which was to the prejudice of appellant; but this prejudicial effect could not be fully known nor appear to the court until after the evidence was before the jury. Even then the trial judge offered to take from the jury certain parts of the incompetent evidence, but counsel for appellant objected. The trial judge sought in every way possible to give appellant the full benefit of the law of self-defense and to shield him from the dangers of irrelevant and incompetent evidence brought out by his own counsel, but in spite of his efforts much such evidence was brought in by appellant's own lawyer.

Without overriding the general rule of law applied by this and other courts of this country, we cannot reverse the judgment and grant appellant a new trial on the grounds of the incompetency and unskillfulness of appellant's lawyer, for it cannot be said that he has not received a fair and impartial trial. Accordng to his own evidence his crime was a wicked one. The penalty imposed by the jury may be too severe and we fear it is, but

the jury were the sole triers of the facts. They heard the evidence and saw, studied and appraised the witnesses. The evidence for the Commonwealth tended to prove that appellant Sayre, after being put out of the deceased's store that night, went away and deliberately armed himself with a shotgun and returned to the place of business of the deceased and murderously shot him to death at a time when the deceased was not attempting to harm appellant. Accepting this theory of the case the jury was fully justified in returning the verdict of death. There are, however, many circumstances surrounding the killing—deceased was a dangerous man, went armed with a pistol, had abused and struck appellant without provocation only a few minutes before and at the time of the homicide deceased had his hand on his pistol—as well as evidence introduced for appellant which appears to reduce the atrocity and excuse in some slight measure the crime of appellant and entitle him to a less penalty that death in the electric chair.

As we find no reversible error in the record the excessiveness, if any, of the penalty imposed by the jury addresses itself to the clemency of the Governor, who alone has power to commute the sentence.

Judgment affirmed.