[Crim. No. 1158. First Appellate District, Division One.—September 5, 1924.]

## THE PEOPLE, Respondent, v. HERBERT R. URE, Appellant.

[1] CRIMINAL LAW—MURDER OF FIRST DEGREE—DUTY OF JURY TO FIX PUNISHMENT.—Where an accused is tried for the crime of murder it becomes the exclusive duty of the jury in the case, in the event that the accused shall be found guilty of first degree murder, to fix and assess the punishment and such punishment must be made a part of the verdict; and the court in pronouncing judgment of sentence in such a case merely carries out the verdict of the jury and is given no authority to impose any other penalty than the one fixed by the jury.

[2] ID.—INDETERMINATE SENTENCE LAW—PENALTY NEED NOT BE SPECIFIED.—In cases involving the indeterminate sentence law it is not necessary for the court in its judgment to specify the penalty,

---

1. See 8 Cal. Jur. 407.
2. See 8 Cal. Jur. 470.

for the reason that the judgment of sentence "merely involves an adjudication by implication from the verdict of conviction of the prisoner's guilt, and his punishment by confinement in one of the prisons of the state, designated in the judgment."

[3] ID.—WHEN COURT MUST FIX TERMS OF IMPRISONMENT.—Where no definite term of imprisonment is fixed by law or the jury but the matter is left to the discretion of the court to be assessed within a minimum and a maximum established by law, the court must state specifically the duration of the imprisonment and insert the same in its judgment, but this rule does not apply where punishment has been fixed by the jury, in its verdict of guilty of murder of first degree, at imprisonment in the state prison for life, leaving no discretion whatever to be exercised by the court.

[4] ID. — MURDER OF FIRST DEGREE — SUFFICIENCY OF JUDGMENT. — Where a judgment, after reciting that the defendant had "been convicted of the crime of murder of the first degree by the verdict of a jury . . . and such jury by its verdict having fixed the punishment in the state prison for life," ordered that defendant "be confined and imprisoned in the state prison of the State of California, at San Quentin, California, as prescribed by law," the court in pronouncing judgment of sentence fully and properly incorporated the findings of the jury in its judgment, and the sentence of the court that the defendant be confined and imprisoned "in the state prison of the State of California, at San Quentin, California, as prescribed by law," can have no other meaning than that the defendant shall be imprisoned for life.

[5] ID.—FORM OR CONTENTS OF JUDGMENT.—The law of this state does not prescribe either the form or the contents of judgments in criminal cases other than it must contain a statement of the offense for which the defendant has been convicted and the sentence of the court.

[6] ID.—INSANITY—EVIDENCE.—In a prosecution for the murder of a woman who was living with defendant in an illicit relationship, where the defendant relied upon the defense of insanity, and in support thereof produced as witnesses a number of intimate friends and acquaintances, who related various incidents by which it was sought to establish the fact that defendant at the time of the commission of the homicide was mentally unbalanced and that the act of killing was the result of a diseased mind, the prosecution,

3.　See 8 Cal. Jur. 466.

5.　See 8 Cal. Jur. 464; 8 R. C. L. 230.

6.　Weakness of mind as affecting responsibility for criminal act, notes, 36 Am. Dec. 402; 76 Am. St. Rep. 83; 10 L. R. A. (N. S.) 999. See, also, 7 Cal. Jur. 681; 8 R. C. L. 64; 14 R. C. L. 598.

Proof of insanity by general reputation, note, 18 Ann. Cas. 935. See, also, 14 Cal. Jur. 367; 14 R. C. L. 618.

in rebuttal, was entitled to show by defendant's written declarations made shortly prior to the act of killing the mental attitude of defendant toward the deceased, in order that the jury might determine whether the killing of deceased was without motive or criminal intent, as contended by defendant, or was inspired by a feeling of jealousy and revenge founded upon an existence of facts, as claimed by the prosecution.

[7] ID.—LETTER BY DEFENDANT TO DECEASED—ADMISSIBILITY OF.—In such prosecution, a letter written by defendant to the deceased on the day preceding the homicide which tended strongly to prove that the defendant killed the deceased to avenge the wrongs claimed to have been suffered by him on account of her misconduct, and which, in this respect, had a direct bearing upon the question of defendant's sanity, was admissible in evidence.

[8] ID.—INSANITY—EVIDENCE.—In such prosecution, the contention of defendant that his insanity was established by more than a preponderance of the evidence and that therefore the verdict of the jury was not warranted cannot be sustained where there is a conflict of proof upon the subject of his alleged insanity.

[9] ID.—EVIDENCE—APPEAL.—The credibility of the witnesses and the weight of the evidence are matters to be determined by the jury, and its conclusions cannot upon appeal be disturbed.

[10] ID.—INSANITY—PRESUMPTIONS—EVIDENCE.—In such prosecution, the defendant was, by the law, presumed to be sane until such presumption was overcome by a preponderance of the evidence, and the jury was entitled to, and doubtless did, take into consideration, along with such presumption of sanity, the acts and conduct of defendant while conversing with the police officers immediately following the homicide, including his rationality and the coherence of his statements, which alone may have been sufficient to satisfy the jury that the defendant was sane.

---

(1) 30 C. J., p. 431, sec. 681, p. 452, sec. 724, p. 455, sec. 725. (2) 16 C. J., p. 1307, sec. 3083 (Anno.). (3) 16 C. J., p. 1307, sec. 3083. (4) 30 C. J., p. 452, sec. 724. (5) 16 C. J., p. 1319, sec. 3108, p. 1231, sec. 3111. (6) 30 C. J., p. 186, sec. 411, p. 222, sec. 453. (7) 30 C. J., p. 186, sec. 411. (8) 17 C. J., p. 270, sec. 3597. (9) 17 C. J., p. 255, sec. 3593, p. 267, sec. 3596. (10) 16 C. J., p. 538, sec. 1011, p. 775, sec. 1587; 30 C. J., pp. 221, 222, sec. 451.

7. See 10 Cal. Jur. 888; 10 R. C. L. 1147.

8. See 2 Cal. Jur. 921; 8 Cal. Jur. 587; 2 R. C. L. 193; 14 R. C. L. 624.

9. Credibility of witnesses, note, 86 Am. Dec. 328. See, also, 28 R. C. L. p. 657.

10. See 14 Cal. Jur. 362.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Eugene K. Sturgis for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The defendant Herbert R. Ure has appealed from a judgment of conviction of murder in the first degree and from an order denying his motion for a new trial. The jury fixed the punishment at imprisonment in the state prison for life. Upon trial appellant did not deny that he had killed the deceased, but he interposed and relied upon the defense of insanity. He now seeks a reversal of the judgment upon three grounds, viz., that the judgment is void; that the trial court erred in admitting in evidence a letter writen by appellant to the deceased on the day preceding the homicide, and that the evidence offered by appellant upon the trial was sufficient to establish the fact that he was insane at the time of the commission of the act and that therefore the verdict was contrary to the evidence.

The form of judgment complained of, after reciting that defendant had "been convicted of the crime of murder of the first degree by the verdict of a jury . . . and such jury by its verdict having fixed the punishment in the state prison for life," orders, adjudges, and decrees that defendant "be confined and imprisoned in the state prison of the state of California, at San Quentin, California, as prescribed by law. . . ."

The contention of the appellant is that said judgment does not specify with certainty the duration of the imprisonment and is consequently void. Considering and construing said judgment in its entirety, as we must (*People* v. *Barnnovich*, 16 Cal. App. 427 [117 Pac. 572]), we think no doubt can arise as to the term of the imprisonment. [1] Where an accused is tried for the crime of murder it becomes the exclusive duty of the jury in

the case, in the event that the accused shall be found
guilty of first degree murder, to fix and assess the pun-
ishment and such punishment must be made a part of the
verdict. That punishment may be either death or confine-
ment in the state prison for life (sec. 190, Pen. Code).
The court in pronouncing judgment of sentence in such
a case merely carries out the verdict of the jury and is
given no authority to impose any other penalty than the
one fixed by the jury. [2] In cases involving the inde-
terminate sentence law it is held that it is not necessary
for the court in its judgment to specify the penalty, for the
reason that the judgment of sentence "merely involves an
adjudication by implication from the verdict of conviction,
of the prisoner's guilt, and his punishment by confine-
ment in one of the prisons of the state, designated in the
judgment." (*In re Carlton*, 53 Cal. App. 225 [200 Pac.
51].) The same rule would apply here but to a different
state of facts. In the one case the duration of the im-
prisonment is fixed by the prison board and in the other
it is fixed by the jury. But in neither case is the dura-
tion of the imprisonment fixed by the court. [3] Where
no definite term of imprisonment is fixed by law or the
jury but the matter is left to the discretion of the court
to be assessed within a minimum and a maximum estab-
lished by law, the court must, of course, state specifically
the duration of the imprisonment and insert the same in
its judgment. But as already pointed out, the nature
and extent of the punishment here was legally and com-
pletely fixed upon the rendition of the verdict by the jury,
leaving no discretion whatever to be exercised by the court.

[4] In the instant case the court in pronouncing judg-
ment of sentence fully and properly incorporated the find-
ings of the jury in its judgment. (*People* v. *Barnnovich*,
*supra*.) It is therefore made to appear upon the face of
the judgment that the punishment of the defendant was
fixed at imprisonment in the state prison for life and the
sentence of the court that the defendant be confined and
imprisoned "in the state prison of the State of Cali-
fornia at San Quentin, California, as prescribed by law,"
manifestly can have no other meaning than that the defend-
ant shall be imprisoned for life. [5] The law of this
state does not prescribe either the form or the contents

of judgments in criminal cases (*People* v. *Barnnovich, supra*) other than it must contain a statement of the offense for which the defendant has been convicted and the sentence of the court. (*Ex parte Williams,* 89 Cal. 421 [26 Pac. 887]; *Matter of Ring,* 28 Cal. 248.) The judgment under consideration meets with those requirements and is therefore valid.

The next point raised by appellant requires a brief statement of the facts. The deceased was a married woman. She had separated from her husband and for about a month preceding the homicide had been, and was at that time, living with the appellant as the latter's wife, in an apartment house. On Monday night, May 7, 1923, about 6:30 o'clock, appellant phoned to the landlady of the said apartment house to ascertain whether the deceased was there, and was informed that she was not. The next day, May 8th, about noon, the landlady heard groans in appellant's apartment. She knocked on the door and asked if there was anyone sick but received no response. Later, about the hour of 3:30, on the same afternoon, the landlady again heard groans more distressing in character than before coming from the same apartment. After violently shaking the door she heard the appellant say, "Call the police—I shot myself." Soon afterward the police arrived and upon entering the apartment found the body of the deceased partly covered with blood and nearly nude, lying upon the floor. She had been shot three times, twice in the head and once in the arm. The appellant was in a conscious condition lying undressed on the bed and was suffering from two gunshot wounds in the head. There were three bottles on the dresser in the room, containing wine. The appellant in the statements made by him to the officers upon their arrival and shortly thereafter said that the deceased had left him on the preceding Saturday night after a quarrel at a dance-hall and had not returned to him until Monday; that he had shot the deceased about the hour of 11 o'clock that morning as a result of a violent quarrel during which they had been drinking; and that he had then attempted to kill himself but the gun "got stuck." The police officer who arrived first upon the scene testified that appellant told him that he shot the deceased because she had "double-crossed" him.

A few days after the homicide the landlady, while cleaning up the apartment in which the homicide occurred, found the letter hereinafter referred to. It had been torn in pieces and placed in a piece of wrapping paper which fell from a folded screen used in the apartment to hide the washbowl. Said letter was in the handwriting of defendant and reads as follows:

"Oakland, Calif., May 7, 1923.

"My dear Little Girl:

"You have just about finished me with your dirty deals, and I think you have found out by this time that I can come back to you. I will call you up about six o'clock tonight, so be there and maybe we can come to some understanding. I have got your things where they are safe, and can get them for you. If it had not been so late last night I would have got the trunks out, too. Now you know I did not object to your running around and having a good time, but I wanted to have you with me some of the time, and you would promise and promise, and not keep them. I consider that Bob is responsible for a good deal, I do not see why you are so damned crazy about him, for you have never got very much out of him, but just as soon as he would show up you would break any date with me. I sure have got tired of it. All I asked of you was that when you said a thing you would keep your word, but you have done nothing but chase around amongst the lowest dives in Oakland, and I have seen less of you than I did when you were in 'Frisco. I don't know but a few months in jail would be a good thing for you. Maybe you would be willing to consider other people a little. You know that I have done a good deal for you, but you do not appreciate it but try to give me a dirty deal whenever you get a chance. Well, you know I told you once that I always tried to get even. Look for a 'phone call tonight between six and seven. If I am not able to get you sooner.

"Your distracted HERBERT."

Said letter was received in evidence over appellant's objections as part of the respondent's case in rebuttal.

Appellant contends that said letter was not competent evidence for any purpose; that it did not show motive for the reason that the matters referred to in said letter

had no relation to the homicide; that it was inadmissible upon the issue of insanity because there was nothing contained in said letter which could be considered as evidence bearing upon the question of appellant's sanity; that because said letter tended to show misconduct not connected with the homicide it had a prejudicial effect on the minds of the jury.

[6] The appellant, as above stated, relied upon the defense of insanity, and in support thereof produced as witnesses a number of intimate friends and acquaintances, who related various incidents by which it was sought to establish the fact that appellant at the time of the commission of the homicide was mentally unbalanced and that the act of killing was the result of a diseased mind. It is apparent that in rebuttal the respondent was clearly entitled to show by appellant's written declarations made shortly prior to the act of killing the mental attitude of appellant toward the deceased, in order that the jury might determine whether the killing of deceased was without motive or criminal intent, as contended by appellant, or was inspired by a feeling of jealousy and revenge founded upon an existence of facts, as claimed by respondent. [7] The statements made by appellant in said letter corresponds with the statements made by him to the officers after the homicide and tended strongly to prove that the appellant killed the deceased to avenge the wrongs claimed to have been suffered by him on account of her misconduct. Said letter in this respect had a direct bearing upon the question of appellant's sanity, which was the only issue raised by him during the trial and was entirely admissible within the rule stated in *People* v. *Valcalda,* 188 Cal. 366 [205 Pac. 452] wherein the authorities upon this subject are reviewed and discussed. We are therefore of the opinion that the court's ruling in admitting said evidence was correct.

[8] The third and final contention of the appellant is that his insanity was established by a preponderance of the evidence and that therefore the verdict of the jury was not warranted. In support of this contention appellant calls attention to the fact that some eighteen witnesses, all of whom were intimate friends and acquaintances, and one medical expert, gave it as their opinion

that appellant was insane, while only five witnesses, one of whom was an expert, testified on behalf of respondent that appellant was sane. It would serve no useful purpose to state in detail the testimony given by these witnesses, because it would only result in showing that there was a conflict in the proof. [9] True, the testimony of some of respondent's witnesses may be fairly subject to the criticism offered by appellant, still, after all, the credibility of the witnesses and the weight of the evidence are matters to be determined by the jury, and its conclusions cannot upon appeal be disturbed.

[10] Furthermore, the jury, in considering the issue of insanity, was not confined to the opinions of witnesses. Appellant was, by the law, presumed to be sane until such presumption was overcome by a preponderance of the evidence, and the jury was entitled to and doubtless did take into consideration, along with such presumption of sanity, the acts and conduct of appellant while conversing with the police officers immediately following the homicide, including his rationality and the coherence of his statements, which alone may have 'been sufficient to satisfy the jury that the defendant was sane.

The state of the record here is similar to the one considered in the case of *People* v. *Willard,* 150 Cal. 543 [89 Pac. 124], wherein the court said that the record presented "the usual and ordinary situation where the evidence was conflicting as to the only real question in the case—the insanity of appellant—the jury finding against it and their finding being supported by material evidence is conclusive on this court."

We find no error in the record and therefore the judgment and order appealed from are affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 3, 1924.

All the Justices concurred.