[Crim. No. 2830.  In Bank.—October 5, 1926.]

## THE PEOPLE, etc., Respondent, *v.* FLOYD HALL, Appellant.

[1] CRIMINAL LAW—MURDER—PENALTY—DUTY OF JURY AND COURT.—On a trial for murder, it is first incumbent upon the jury to determine the guilt or innocence of the accused and if he be found guilty of murder in the first degree, it is for the jury to fix the penalty; and if the accused enter a plea of guilty as charged it becomes the duty of the court to determine the degree in accordance with law and to fix the penalty; in the first case the jury has the discretion to fix the penalty at death or confinement in the state's prison for life, and in the second the court exercises a like discretion after the offense is determined by it to be first degree murder.

[2] ID.—POWER OF COURT AND JURY.—The power of the court and jury in such a case is each exclusive and independent of the other; the court has no more the power to determine the penalty when a verdict of guilty of murder in the first degree is returned than a jury has the power to determine the penalty when the accused enters a plea of guilty.

[3] ID.—VERDICT—UNANIMOUS AGREEMENT.—Under the law, the verdict in such a case must be the result of the unanimous agreement of the jurors, and is incomplete, unless, as returned, it embraces the two necessary constituent elements; first, a finding that the accused is guilty of murder in the first degree; and, secondly, legal evidence that the jury has fixed the penalty in the exercise of its discretion.

[4] ID.—DISCRETION OF JURY—MANNER OF EXERCISE.—The jury may exercise its discretion as to the penalty in such a case in one of three ways: It may fix the death penalty by so wording its verdict, or by remaining silent as to the penalty, or it may by so wording its verdict fix the penalty at life imprisonment.

[5] ID.—VERDICT—FORM OF.—The result of the exercise of the discretion of the jury in fixing the penalty in such a case must appear on the face of the verdict either by the use of specific words to express it; or, in the absence of such words, by necessary inference in the light of the instructions; and when the jury finds the defendant guilty of murder in the first degree, but disagrees as to the penalty, it cannot be said that it fixes the death penalty.

---

1. See 13 **Cal. Jur.** 743, 746.

[6] ID.—INSUFFICIENT VERDICT—FAILURE TO AGREE ON PENALTY—MIS-
TRIAL.—Where the verdict in such a case finds the defendant guilty
of the crime of murder in the first degree as charged, but states
that the jury cannot come to a unanimous agreement as to the
degree of punishment, the verdict is not one upon which the court
is authorized to pronounce judgment of either death or life im-
prisonment, and as the court was not authorized to receive such
verdict the proceeding resulted in a mistrial.

[7] ID.—DEFECT IN VERDICT—DENIAL OF TRIAL BY JURY.—The defect
in the verdict in such a case was not merely an error "in matter
of procedure," as contemplated by section 4½ of article VI of
the constitution, but involved a matter of substance and substan-
tive right and was in effect the denial of the right of a trial by
jury.

[8] ID.—SECTION 4½, ARTICLE VI, OF THE CONSTITUTION—CONSTRUC-
TION.—The amendment by which section 4½ of article VI of the
constitution was added to the constitution was not designed to
repeal or abrogate the guarantees accorded persons accused of
crime by other parts of the same constitution, or to overthrow
all statutory rules of procedure and evidence in criminal cases.

[9] ID.—TRIAL BY JURY—DENIAL OF RIGHT.—Trial by jury is guaran-
teed to every person charged with a felony and the denial of
that right is in itself a miscarriage of justice.

[10] ID.—ESCAPE FROM STATE'S PRISON—EVIDENCE.—In a prosecution
for murder, evidence that the defendant at the time of his appre-
hension on the charge was an escape from the state prison, where
he was serving a life sentence for murder, was admissible, not
as affecting the question of his guilt of the crime for which he
was on trial, but solely as bearing on the question of punishment
to be meted out to him in the event of a conviction.

[11] ID.—FLIGHT—CIRCUMSTANCES ATTENDING.—In such a case, a box
of cartridges and a rifle that had been sawed off by the defend-
ant were properly admitted in evidence as a circumstance attend-
ing the alleged flight of the defendant.

[12] ID.—EVIDENCE OF FLIGHT—PURPOSE.—Flight of a person after
the commission of a crime, while not of itself sufficient to estab-
lish guilt or to raise a presumption of guilt, is a circumstance to
be considered by the jury in connection with all the other facts
and circumstances in the case as tending in some degree to prove

8.   See 8 Cal. Jur. 603.

10.   See 15 Cal. Jur. 340; 16 R. C. L. 193.

12.   See 8 Cal. Jur. 44; 8 R. C. L. 192.

the consciousness of guilt; and it is permissible in proof of the fact of flight, to show all of the facts and circumstances attending it.

(1) 30 C. J., p. 455, n. 77.  (2) 30 C. J., p. 455, n. 77.  (3) 30 C. J., p. 455, n. 77.  (4) 30 C. J., p. 455, n. 77.  (5) 30 C. J., p. 455, n. 77.  (6) 30 C. J., p. 455, n. 77.  (7) 17 C. J., p. 369, n. 10. (8) 17 C. J., p. 369, n. 6.  (9) 35 C. J., p. 191, n. 66.  (10) 16 C. J., p. 1343, n. 5.  (11) 30 C. J., p. 211, n. 94.  (12) 30 C. J., p. 210, n. 93.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Raymond T. Coughlin and Francis W. Murphy for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

Milton T. Farmer and Henry E. Monroe, *Amici Curiae.*

SHENK, J.—This is an appeal by the defendant from a judgment of conviction and from an order denying his motion for a new trial. By an indictment of the grand jury of Sacramento County the defendant and Joseph Tanko were charged with the murder of H. J. Litzberg on the seventeenth day of April, 1925. The defendant herein was apprehended and brought to trial but Tanko is still at large. The jury returned the following verdict: ''We, the jury in the above-entitled cause, find the defendant Floyd Hall guilty of the crime of murder as charged in the indictment, of the first degree. But cannot come to an unanimous agreement as to degree of punishment.''

The trial court received the verdict, caused the same to be recorded, and, in pursuance thereof, sentenced the defendant to suffer the penalty of death. The main contention on the appeal is that the court was without power to fix the penalty when the defendant was on trial before a jury on a plea of not guilty; that such power was vested solely in the jury on the trial of such issue and that the discharge of the jury

following the return of said verdict resulted in a mistrial. The effect of a verdict returned in that form presents a novel question and depends upon the proper construction of section 190 of the Penal Code. As enacted in 1872 that section provided: "Every person guilty of murder in the first degree shall suffer death." As amended in 1873 the section was made to read as presently framed: "Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; or upon a plea of guilty the court shall determine the same; . . . " It is the contention of the attorney-general that, under the amended section, the accused, when the jury has determined that he is guilty of murder in the first degree, must suffer death unless the jury by unanimous agreement, fix the penalty at life imprisonment, notwithstanding the fact that the verdict on its face discloses that the jury could not and did not arrive at a unanimous agreement as to either penalty. The amended section was first considered by this court in October, 1874, in the case of *People* v. *Welch,* 49 Cal. 174. In that case the jury returned the following verdict: "We, the jurors, do find the defendant Welch guilty of murder in the first degree, as charged in the indictment." It was declared, in view of the amendment: "Here their [the jurors'] discretion is limited, at most, to determining which of two punishments shall be inflicted." It was decided that by that form of verdict the jury had determined that the defendant must suffer the death penalty. In further discussion of the question the court stated: "And we think that it [the discretion of the jury] is still more restricted and is to be employed only when the jury is satisfied that the lighter penalty should be imposed," and that the amended section should be construed as if it read: "shall suffer death, or [in the discretion of the jury] imprisonment in the state prison for life." This further discussion was unnecessary to the decision and we see no reason for limiting the discretion to either penalty. The language of the amended section plainly vests the jury with discretion as to both penalties, and the practical application of that language from the time of the enactment, as disclosed by the decisions of this court, plainly indicates that said discretion is so vested and is to be exercised in the manner provided by law and the instructions of the court.

What was really decided in the Welch case was that in the exercise of its discretion to determine which of the two punishments should be inflicted, the jury fixed the penalty at death when it returned a verdict of guilty of murder in the first degree and said nothing in the verdict as to the penalty. That case, as to the material point there involved and decided, was followed in *People* v. *McCurdy,* 68 Cal. 576 [10 Pac. 207], and in *People* v. *French,* 69 Cal. 169 [10 Pac. 378]. In each of those cases, as in the Welch case, the verdict was a simple verdict finding the defendant guilty of murder in the first degree and was silent as to the penalty. An examination of the records in those cases discloses that, under the instructions of the court, there could have been no misapprehension on the part of the jury as to the fact that, pursuant to a verdict returned in that form, the sentence of death would necessarily follow and that the court would have no alternative in the premises. This rule has been uniformly adhered to since those early cases. A few citations will suffice: *People* v. *Leary,* 105 Cal. 486 [39 Pac. 24]; *People* v. *Sainz,* 162 Cal. 242 [121 Pac. 922]; *People* v. *Ellis,* 188 Cal. 682 [206 Pac. 753]; *People* v. *Paraskevopolis,* 42 Cal. App. 325 [183 Pac. 585]; *People* v. *Ure,* 68 Cal. App. 545 [229 Pac. 987]. The subject is treated and the rule reiterated in the recent case of *People* v. *Bollinger,* 196 Cal. 191 [237 Pac. 25, 30], where, after quoting section 190 as amended, it is said: "It is true the jury alone shall determine in a case of murder in the first degree whether the punishment shall be death or confinement in the state prison for life and that the jury after exercising such discretion shall by its verdict, either by its terms or when read in the light of the instructions, plainly indicate the punishment fixed. . . . The silence of the verdict as to the punishment must, therefore, in the light of the instructions, be taken as the equivalent of a finding that appellant shall suffer the death penalty."

In *People* v. *Perry,* 195 Cal. 623 [234 Pac. 890, 897], it was said: "It is the jury's right and duty to consider and weigh all the facts and circumstances attending the commission of the offense, and from these and such reasons as may appear to it upon a consideration of the whole situation, determine whether or not in the exercise of its discretion, life

imprisonment shall be imposed rather than the infliction of the death penalty.''

[1] From a consideration of our decisions it appears to be the settled law of this state that in the trial on a charge of murder it is first incumbent upon the jury to determine the guilt or innocence of the accused. If he be found guilty of murder in the first degree it is then incumbent on the jury to fix the penalty. If the accused enter a plea of guilty as charged it then becomes the duty of the court to determine the degree in accordance with law and then to fix the penalty. In the one case the jury has the discretion to fix the penalty at death or confinement in the state prison for life. In the other case the court exercises a like discretion after the offense is determined by the court to be first degree murder. [2] The power of each is exclusive and independent of the other. The court has no more the power to determine the penalty when a verdict of guilty of murder in the first degree is returned than a jury has the power to determine the penalty when the accused enters a plea of guilty. [3] Under the law the verdict in such a case must be the result of the unanimous agreement of the jurors and the verdict is incomplete unless, as returned, it embraces the two necessary constituent elements; first, a finding that the accused is guilty of murder in the first degree, and, secondly, legal evidence that the jury has fixed the penalty in the exercise of its discretion. [4] The jury may exercise its discretion as to the penalty in one of three ways. It may fix the death penalty by so wording its verdict, or by remaining silent as to the penalty, or it may by so wording its verdict fix the penalty at life imprisonment. When the penalty is fixed at death or at imprisonment for life by definite and specific wording of the verdict no difficulty is or has been encountered, and since the early case of *People* v. *Welch, supra,* it has been the established and uniformly enforced rule that a verdict, which finds the accused guilty of murder in the first degree and is silent as to the penalty, affords conclusive evidence to the court and to the world that the jury has, by that form of verdict, exercised its discretion and thereby fixes the penalty at death. The rule, of course, has been and is applied under appropriate instructions by the court such as were given in this case as follows: ''It is provided by the law of this state that every person convicted

of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same. You will observe, therefore, that if you find from all of the evidence in the case to a moral certainty and beyond a reasonable doubt, that the defendant is guilty of murder of the first degree, then, upon such finding, the discretion is vested in you of determining what the punishment shall be, whether death or imprisonment for life. . . . If you render a verdict of guilty of murder of the first degree, and say nothing about the penalty, it will be the duty of the court to impose the penalty of death.'' The duty of the jury was thus made plain. Its discretion was to be exercised in the manner pointed out in the instructions and under section 190 of the Penal Code that discretion applied both to the fixing of the death penalty and the penalty of life imprisonment. [5] The result of the exercise of that discretion must appear on the face of the verdict either by the use of specific words to express it or in the absence of such words by necessary inference in the light of the instructions. It may, therefore, not rightly be said that when the jury found the defendant guilty of murder in the first degree, but disagreed as to the penalty, it thereby fixed the death penalty. It was the duty of the jury to exercise its discretion and fix the penalty. Failing to do so no penalty was determined upon. The jury could not exercise its discretion and not exercise it in one and the same verdict. [6] When a verdict, such as the one here under consideration, discloses on its face that such discretion was not exercised as to either penalty it is not a verdict upon which the court is authorized to pronounce judgment of either death or life imprisonment. In receiving such a verdict and in imposing the sentence of death upon the defendant, the court usurped the function of the jury and its judgment was a nullity. The proceeding therefore resulted in a mistrial and the judgment must be reversed. It is obvious, from what has been said, that the trial court should not have received the verdict in its present form, but should have caused the jury to return a verdict in conformity with law or should have discharged the jury and retried the cause.

[7] It is earnestly insisted by the respondent that the defect in the form of the verdict constitutes no more than "matter of procedure"; that under section 4½ of article VI

of the constitution the judgment should not be reversed for the reason that, upon an examination of the entire cause including the evidence, the guilt of the defendant is shown, and that an affirmance of the judgment would not constitute a miscarriage of justice. We cannot agree that the defect in the verdict was merely an error in "matter of procedure" as contemplated by said section 4½. On the contrary the defect involved matter of substantial and substantive right. It was in effect the denial of a trial by jury. [8] The amendment by which said section 4½ was added to the constitution was not "designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the same constitution, or to overthrow all statutory rules of procedure and evidence in criminal cases" (*People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042] ; *People* v. *Frey,* 165 Cal. 140 [131 Pac. 127] ; *People* v. *Wilson,* 23 Cal. App. 513 [138 Pac. 971] ; *People* v. *Ho Kim You,* 24 Cal. App. 451 [141 Pac. 950] ). [9] Trial by jury is guaranteed to every person charged with a felony and the denial of that right is in itself a miscarriage of justice. (See *Farrell* v. *City of Ontario,* 39 Cal. App. 351 [178 Pac. 740].) In view of the fact that the cause must be remanded for a new trial, we express no opinion as to the sufficiency of the evidence to sustain a verdict, but this much may properly be said, generally, that however degraded and hardened a criminal the evidence may disclose an accused to be, he is entitled under the constitution to trial by jury. In legal effect this right was denied to the defendant in the case at bar. The proceedings before the trial court amounted to the same as if the court had denied the defendant a trial by jury in the first instance and, having heard the evidence and found the defendant guilty, proceeded to impose the judgment of death. Such a judgment may not stand even though there be the clearest proof of guilt.

[10] Since the judgment must be reversed it seems necessary to pass upon other contentions presented by the defendant to the end that they be determined for the purposes of a new trial. At the time of his apprehension on the present charge the defendant was an escape from the state prison at San Quentin. At the trial the prosecution, over the objection of the defendant, was permitted to prove that at the time of the defendant's escape he was undergoing

a sentence of life imprisonment resulting from a former charge of murder. He urges the admission of this evidence as prejudicial error. This evidence was not offered nor admitted as affecting in any manner the question of the defendant's guilt of the crime for which he was then on trial, but solely as bearing on the question of punishment to be meted out to him in the event of a conviction. The court fully instructed the jury to that effect. A similar situation was presented in the case of *People* v. *Hong Ah Duck*, 61 Cal. 387, where it was held that such evidence was admissible. It was there stated, with reference to the determination by the jury of the penalty: "In order to exercise that discretion in a wise and intelligent manner, the jury should be put in possession of all the facts of the case; and if it be true, as it was in respect to this defendant, that a verdict fixing the punishment at imprisonment for life would in effect be no punishment at all, we think it was proper to inform the jury of that. fact." Counsel for the defendant calls attention to the fact that when that case was decided a sentence of imprisonment for life meant what it said and not a life sentence following which the defendant might live out a long life at large after his discharge under our present parole laws, and that under those laws another life sentence might add to his present punishment by increasing the minimum time in prison. Even so, we think the principle is the same in each case and that said evidence was admissible as tending to enlighten the jury on the very important matter of the extent of the punishment to be fixed by the jury in the exercise of its discretion.

[11] It is further contended by the defendant that the court erred in the admission in evidence of a box containing seventeen cartridges, together with a Savage rifle which had been sawed off by the defendant. When these articles were offered in evidence it was objected that they were inadmissible in that they did not constitute a part of the *res gestae*, that the proper foundation for their admission had not been laid in that it was not made to appear that the cartridges were the same as those taken from the defendant or that they were in the same condition as when found in the possession of the defendant, and that their possession by the defendant was too remote in point of time from the commission of the crime. If it be assumed, as in effect the de-

fendant claimed to the arresting officers, that he obtained these articles subsequent to the time when the crime was alleged to have been committed, then, of course, they could not have been connected with the commission of the alleged crime and would have been inadmissible under the rule ordinarily obtaining that evidence of the possession of weapons not connected with the offense charged is irrelevant. It does not appear, however, that the articles in question were offered in evidence upon the theory that they were in anywise connected with the commission of the offense and it is fairly inferable, from the record before us, that they were offered in evidence as a circumstance attending the alleged flight of the defendant. The prosecution offered proof of the search for the defendant by officers of the law, his pursuit, and his capture. [12] It is elementary that the flight of a person after the commission of a crime, while not of itself sufficient to establish guilt or to raise a presumption of guilt, is a circumstance to be considered by the jury in connection with all the other facts and circumstances in the case as tending in some degree to prove the consciousness of guilt, and evidence thereof is admissible, not as part of the *res gestae,* but as indicative of a guilty mind. It is permissible, in proof of the fact of flight, to show all of the facts and circumstances attending the flight either to increase or decrease, as the case may be, the probative force of the fact of flight. In other words, when testimony as to flight is resorted to, it is proper to show the extent of the flight and the circumstances thereof, including the acts and doings of the defendant, which tend to characterize and increase its significance. It was, therefore, proper for the prosecution to show, as bearing upon this question, that the defendant had ammunition and firearms in his possession which were adapted to further his flight and thereby accentuate the fact of flight. For this purpose the articles in question were admissible in evidence. We are satisfied from the record that the proper foundation for the introduction of these articles was laid.

Numerous instructions given by the court are complained of, and it is insisted that certain instructions offered by the defendant were erroneously refused. It is unnecessary to quote them for the purposes of a ruling thereon. An examination of the record satisfies us that the charge to the jury was full and fair and that just complaint may not be predi-

cated on any instruction given or on the refusal to give any of the instructions proposed by the defendant.

Prejudicial misconduct is charged against the trial judge and the district attorney. Numerous specifications are presented by the defendant. Upon examination of the record we find nothing that requires discussion in view of the necessity of a new trial.

The judgment is reversed.

Richards, J., Seawell, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.