[Crim. No. 811. Fourth Dist. Mar. 21, 1950.]

THE PEOPLE, Respondent, v. HENRY F. YOUDERS, Appellant.

Henry F. Youders, in pro. per., and Gordon W. Mallatratt for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged in one count of an information with the crime of issuing and passing a check in the sum of $10 on May 29, 1949, to one Gilbreath, with intent to defraud. In the second count he was charged with passing a fictitious check. Then followed an allegation of "prior conviction" alleging that defendant was convicted of forgery in Nevada, and served a term in a penal institution. Defendant admitted this prior conviction and pleaded not guilty to each count of the information. Trial before a jury was had resulting in a verdict of guilty as to the first count and not guilty as to the second count. Defendant appealed.

Defendant first complains that the conviction is contrary to the evidence, mainly because he testified that the $10 check was postdated; that it was given to the complaining witness about May 22d or 23d and that he was told by defendant that he was to hold the check until he could repay the sum of $10 to him; that the transaction was, in effect, the giving of a promissory note as security for the loan.

The evidence on this point is highly conflicting. Gilbreath testified that on May 29, 1949, about 2 o'clock in the afternoon, defendant came to his gasoline service station; that he bought five gallons of gasoline and a package of cigarettes and asked him to cash a personal check for him; that he asked defendant what bank he wanted the check drawn on and defendant told him the "Bank of America"; that defendant made out the check and told Gilbreath: "This check will be good," or it "would be good—You won't have to hold it"; that Gilbreath cashed the check and gave defendant the balance in cash; that he deposited it on the next business day and it was returned to him by the Bank of America marked "No account." It is conceded that the defendant never had an account nor credit with this bank. About ten days before

this transaction defendant obtained a used tire and tube from Gilbreath because of a flat tire which defendant had on his car. On that occasion he gave Gilbreath a personal check for $3.00, which Gilbreath was to hold for a few days. On the 29th of May defendant did pick up this check for $3.00 and paid it. Although Gilbreath was confused as to whether or not defendant filled out the face of the check and whether the check was dishonored on May 30 or 31, yet he was positive in his statement that the defendant was in his place of business on the 29th day of May and not the 22d or 23d, as claimed by the defendant. Defendant fixes the date of the transaction as being on the 22d or 23d of May, due to the fact that he had money coming from a packing company and that on the 25th day of May he secured and cashed his paycheck and left for Oregon in company with one. Bartlett. He testified that he was in Oregon on the 29th day of May and therefore could not have been present in California at the time indicated by Gilbreath. The defendant produced in evidence a letter posted on *June 6th* in Oregon, written to his brother, in which defendant acknowledged owing Gilbreath money and in which he indicated that his brother should advise Gilbreath that defendant's "intentions were good" and that he would repay him sometime in July when he returned home. Defendant produced a witness, Decker, who testified that he drove defendant to Oregon on May 25, that he did not stay in Oregon but came back to California to pick up his wife, and during the four days that it took him to accomplish this, he did not see defendant; that he returned to Oregon and worked with the defendant for many days thereafter. On rebuttal Gilbreath again denied that the check was postdated and maintained that it was given to him on May 29, and denied that anything was said about holding the check. He reiterated the fact that defendant told him that the check was good.

The evidence surrounding the giving of the check involved in the second count indicates that defendant passed a fictitious check in the same town on May 13. However, the jury returned a verdict of not guilty on this count. As to the first count, it is clear that the prosecution did establish by the evidence all the elements of the offense denounced by section 476a of the Penal Code.

Defendant argues that the testimony produced by the prosecution as to whether the check was or was not postdated is so weak and so highly improbable that the court was not

justified in submitting the conflict in the evidence to the jury and that this court should therefore reverse the judgment upon this ground. There was a substantial conflict in the evidence. Where there are substantial conflicts in the evidence before the jury and the jury has resolved such conflicts against the defendant, the appellate court is bound by the finding of the jury. (*People* v. *Thompson*, 114 Cal.App. 258, 260 [299 P. 821].) It does not appear that the testimony of the complaining witness was improbable. (*People* v. *Rose*, 9 Cal.App. 2d 174, 176 [48 P.2d 1009].) The jury chose to believe the story of the alleged victim. The defendant admitted he had received a check for $35 for his wages and had the money to pay Mr. Gilbreath, and yet he departed for Oregon without seeing him or making any other arrangements. The fact that defendant posted a letter in Oregon on June 6 does not conclusively show that he was not in California on May 29. Defendant's testimony was entitled to be weighed by the jury and the fact that his testimony was impeached by the admission that he had been convicted of a felony was entitled to be considered by the jury. (*People* v. *Becker*, 80 Cal.App.2d 691, 693 [181 P.2d 958].)

 The next complaint is that the district attorney was guilty of misconduct in relation to the cross-examination of the defendant as to his previous conviction of a felony and the claimed conviction of other similar offenses committed by the defendant prior to May 29, 1949. He claims that his past offense of which he admitted conviction was not a proper subject of cross-examination under section 1025 of the Penal Code. It is well settled that a defendant may be impeached by proof of a prior conviction of a felony if he takes the stand in his own defense and it is not error to ask him if he has suffered such a prior conviction and the nature of the crime. (*People* v. *Romer*, 218 Cal. 449 [23 P.2d 749] ; *People* v. *O'Brand*, 92 Cal.App.2d 752 [207 P.2d 1083] ; *People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924].) With regard to the claimed crimes of which the prosecution inquired, the record shows that most of the information concerning these offenses was volunteered by the defendant, and no objection was made at the time to the introduction of this evidence. The cross-examination of the defendant in reference to these charges was generally as follows:

"Question by the prosecution: Have you ever previously been convicted of a felony? A. Yes, sir, I have. Q. What felony? A. I was convicted in Nevada—it was a gambling

affair which I did give a note as security, and I was sentenced. Q. Was the charge issuing a check without sufficient funds? A. It was issuing a check. . . . Q. You served time therefor in a penal institution? A. Yes, I did. This check I wrote in Nevada was a gambling affair. But the gambling was legal in Nevada. They held it in Court just like a check any place else. Q. Have you ever knowingly issued a check without sufficient funds, without informing the other party that that was the case? . . . A. No, sir, I haven't. Q. I will ask you if you gave a check to a hospital in Alameda? A. That wasn't an NSF check. I used my mother-in-law's name in order to pay a hospital bill. Q. In other words that was a forgery? A. Well, it was not. There was no complaint signed as far as the name used on the check. The District Attorney made a —filed a complaint against me, but they gave me a light sentence under the conditions that I was paying a hospital bill for the wife with which I had no funds to pay . . . Q. You cashed a check in the amount of about $50, with Mr. McKay, at his store? A. I know of that check. I had no connection —I can say I had no connection with the check other than receiving it. . . . Q. Do you remember talking with me over at the Tulare County Jail? . . . A. I distinctly remember every word. Q. Isn't it a fact that at that time you told me you cashed this check for another party and he was going to give you half of the money? A. No, sir. I made the same mention to you as now, that I knew of the check, that it was pasesd and that I was to pay it back. I was to make it good. Q. Why should you send money back to make it good, if you had nothing to do with it? A. Well, there was a connection there. This fellow—I was accused of cashing the check. But I had nothing to do with the cashing or writing, but I was involved and was frightened and was scared to contest it, because I had had a previous conviction. That is why I sent money to pick it up. I knew if they would get me in Court, and knowing of my past, they were liable to send me up regardless if I had anything to do with it or not. . . . A. . . . That was after my Nevada conviction. . . . I got word from my family they had a warrant for my arrest on this check . . . I sent payments to pay it off to save the trouble of appearing in Court.''

Under the circumstances related it does not appear that there was misconduct on the part of the district attorney and, if there had been, defendant cannot complain for the first time on

appeal because he failed to object to this line of questioning and there was no request to the trial judge to strike the testimony or to instruct or admonish the jury in reference thereto. (*People* v. *Alexander,* 92 Cal.App.2d 230 [206 P.2d 657]; *People* v. *DuBois,* 16 Cal.App.2d 81, 87 [60 P.2d 190]; *People* v. *O'Brand, supra.*) Other offenses are admissible as bearing on the question of defendant's intent. (*People* v. *Sindici,* 54 Cal. App. 193 [201 P. 975]; *People* v. *Anderson,* 95 Cal. App. 225 [272 P. 755].)

 Attached to appellant's opening brief, which was prepared by himself, in propria persona, there is attached an affidavit of the defendant in which he claims that he was illegally removed from the State of Oregon to stand trial in California and that the trial court here had no jurisdiction to pronounce judgment upon him. He recites certain facts indicating that he demanded the sheriff of Douglas County, Oregon, to permit him to seek an attorney or permit him, in propria persona, to bring a habeas corpus proceeding to test the validity of the warrant; that since he refused to sign a waiver of extradition his constitutional rights were invaded. The affidavit shows that defendant did retain an attorney in that state who petitioned the court for a writ of habeas corpus and that the court granted the writ on the ground that issuing a check without sufficient funds did not constitute a felony in the State of Oregon and therefore was not an extraditable offense; that thereafter the second warrant was forwarded which included the charge of forgery, an extraditable offense, and that therefore the governor signed extradition papers. Defendant's complaint is that he was deprived of his rights by not being apprized of the hearing pertaining to the extradition matter and was not permitted to be present in his own behalf. It does not properly appear before this court that there was any illegal extradition of the defendant from Oregon. The affidavit is not a part of the certified record on appeal and we do not feel disposed to go outside of the record to consider this point, particularly where it does not appear to have merit. (*People* v. *Gonzales,* 69 Cal.App. 609 [231 P. 1014]; *People* v. *Agnew,* 16 Cal.2d 655, 660 [107 P.2d 601].) Furthermore, the matter was not raised before the trial court and is considered waived by the defendant on appeal. (*People* v. *Newell,* 192 Cal. 659 [221 P. 622].) Even though the defendant may have been brought before the trial court by illegal proceedings, this does not deprive that court of jurisdiction. (*People* v. *Pratt,* 78 Cal. 345 [20 P. 731].) The next contention

seems to be that the defendant was denied the right to subpoena witnesses and the court erred in refusing to cite a witness for failure to appear. There is very little in the record to support this charge. It is defendant's contention that his attorney in the trial court was negligent in failing to have a subpoena issue. The only evidence on this subject appears in the transcript in relation to the cross-examination of the defendant. The testimony of Mr. Gilbreath was that he *thought* the defendant was alone at the time he passed the $10 check upon him. In response to the question: ''Who was present when you and Mr. Gilbreath talked about it?'' (the check). Defendant answered: ''The fellow with me was Clyde Bartlett. I asked for a subpoena to have him in court as a witness, but he hasn't appeared.''

Defendant argues in his brief that he asked his attorney to subpoena this witness and that his attorney informed him that he had been subpoenaed and that no action was taken against this witness for his refusal to obey the subpoena, and that consequently he was denied due process of law. Other than the statement made by the defendant on the witness stand, the record does not show that defendant asked his attorney to subpoena the witness nor does it show that the witness was subpoenaed or that the witness failed or refused to attend or that such witness actually existed. The trial judge cannot be blamed for supposedly failing to cite the witness for failure to observe a subpoena in the absence of a request for such a citation. Defendant made no request for a continuance for the purpose of securing the presence of the desired witness. A subpoena is issued as a matter of course and since other witnesses appeared and testified for the defense, there is no reason to believe that defendant was denied the right to produce the person he contends failed to appear. ▇ If defendant felt his counsel did not adequately represent him he should have complained to the trial court and given that court an opportunity to correct the situation. In the absence of such complaint the acts of defendant's counsel are imputed to him. (*People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657]; *Sayre* v. *Commonwealth,* 194 Ky. 338 [238 S.W. 737, 24 A.L.R. 1017, 1025]; *People* v. *Figueroa,* 134 Cal. 159, 163 [66 P. 202].)

In this connection, in defendant's closing brief, wherein he is represented by an attorney, he claims that the public defender, who represented the defendant at the trial, was ''not

diligent in protecting defendant'' and that defendant was ''not afforded the constitutional right to effective assistance of counsel,'' citing such cases as *Powell* v. *State of Alabama,* 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527] ; and *United States* v. *Bergamo,* 154 F.2d 31.

For the reasons stated, we see no merit to this argument. An examination of the entire record indicates that the defendant had a fair and impartial trial and that the public defender fairly represented the defendant. The public defender was successful in procuring a verdict of not guilty as to the second count and was successful in obtaining a recommendation of leniency as to the first count. The issues were properly placed before the jury under proper instructions and no prejudicial error resulted.

█ The next complaint is technical in form. The order of commitment committed the defendant to the state prison in San Quentin and directed that he be remanded to the custody of the sheriff and by him taken and delivered to the Director of Corrections at that institution upon the charge alleged, including the prior conviction. Defendant complains because the court failed to include therein the phrase ''for the term prescribed by law.'' Section 1168 of the Penal Code provides that every person convicted of a public offense shall be sentenced ''to be imprisoned in a State prison, but the court in imposing the sentence shall not fix the term or duration of the period of imprisonment.'' It has been expressly held and is now settled that under this section the court has only to sentence the defendant to such state prison in order to comply with the provisions of section 1168, *supra.* (*People* v. *Page,* 86 Cal.App. 148, 159 [260 P. 591] ; *People* v. *Ure,* 68 Cal.App. 545, 548 [229 P. 987] ; *People* v. *Mendosa,* 178 Cal. 509, 510 [173 P. 998].)

█ In the last complaint defendant argues that under the information in the first count he was charged with violating section 476a of the Penal Code; in the second count with the crime of forgery; and in a third count with a prior conviction of a felony; that since he was acquitted of the second count, the count pertaining to his prior conviction of a felony could have no application to the first count. This argument is more fanciful than real. The mere fact that the allegation of prior conviction follows the second count does not mean that it is included therein. The allegation pertaining to the prior conviction follows the language of section 969 of the Penal Code, which prescribes how the prior conviction should be pleaded.

The defendant admitted the prior conviction before his trial on the two counts involved. The information did charge that "before the commission of the *offense* charged in this information, the defendant sustained a prior conviction." Even though the pleader used the singular "offense," and the information contains more than one count, there is no reason to conclude that this allegation was to be limited to only one count. (*People* v. *Howard,* 31 Cal.App. 358 [160 P. 697].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 20, 1950.