[Crim. No. 3627. In Bank.—March 28, 1934.]

THE PEOPLE, Respondent, v. ARTHUR SHORTEN, Appellant.

Frederic H. Vercoe, Public Defender, for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

SHENK, J.—The defendant was prosecuted for the murder of his wife, Sally Shorten. From a judgment imposing the death penalty and from an order denying his motion for a new trial the defendant appeals.

The defendant and his wife, the deceased, with two children, formerly resided at Port Arthur, Texas. The wife with the children removed to Los Angeles in August, 1931. The defendant followed them in December of the same year, and resided with his family on 114th Street in that city.

John Finney, a brother of the deceased, was an eye-witness to the tragedy and testified at length for the prosecution. In April, 1932, Finney was living with his family also on 114th Street and opposite the place of residence of the defendant. Finney's family included his wife and four small children, one of whom was a baby ten days old. Mrs. Finney and another child were ill and the deceased was temporarily residing with them and assisting in the care of the mother, the babe, and the sick child.

On the evening of April 25, 1932, the defendant went to the Finney house and requested his wife to come to her own house for the night, and she refused to comply with the defendant's request. She retired for the night before the defendant, about midnight, left for his own home, taking one of his children, a boy, with him. At about ten minutes of six on the following morning, the twenty-sixth, the defendant appeared again at the Finney home and found his wife in the kitchen preparing breakfast. He said "good

morning'' to those present and was asked to have breakfast, which he declined, and announced that he was about to leave for Imperial Valley and intended to take his boy with him. The deceased objected to his leaving home, for the reason that he was then employed and had no prospect of employment in Imperial Valley. She also objected to the boy's leaving home. The defendant was standing next to the drainboard, behind his wife, when he fired a shot from a 38-caliber revolver. The effect of this discharge is not disclosed except that it caused the deceased to run to another room. The defendant followed her, striking her on the head with the barrel end of the revolver, and continued shooting. The deceased fell to the floor. One of the bullets struck the left hand of the defendant and lodged in his knee, whereupon he fell to the floor beside the body of his wife. While in this position he stripped the gun of the empty shells, reloaded the chambers, and continued to fire into the body of his wife.

The foregoing facts were corroborated by other witnesses and there is no contradiction in the evidence. The autopsy surgeon found evidence that nine bullets had entered the body of the deceased, six in her head and face and three in her arms and shoulders, and that the skull was fractured. After the shooting a doctor was called. Upon his arrival he summoned an ambulance and the wife died as her body was being moved on the stretcher. Shortly after the doctor's appearance the defendant exclaimed, ''You don't understand; she left me; please kill me.''

Before the body of the deceased was removed a police officer, responding to a call, found the defendant on the dining-room floor, with the wife's body beside him. The officer, among other things, asked the defendant what was the cause of the trouble and the reply was, ''family troubles''.

After his arrest the defendant stated to the officers that he had had a quarrel with his wife; that he went to the Finney house in the early morning armed with a revolver, intending to do something; that rather than go on living as they had been he ''went with the thought in mind to kill her'', and that he meant to kill her.

The defendant entered pleas of ''not guilty'' and ''not guilty by reason of insanity''. After the trial on the first

plea the jury returned the following verdict: ''We, the jury in the above entitled action, find the defendant guilty of murder as charged in the information and find it to be murder of the first degree.'' On the trial of the second plea before another jury about two months later the defendant was found to have been sane at the time of the commission of the offense.

On the appeal no question is raised as to the sufficiency of the proof, either as to the commission of murder of the first degree, or as to the sanity of the defendant at the time in question. ██ The only assignment of error in the record is that, by their verdict on the plea of ''not guilty'', the jury did not agree upon the penalty of death. The basis of the argument in that behalf is the proceedings had when the jury returned to court in the course of its deliberations. After the instructions were given the jury retired at three o'clock in the afternoon. At four-thirty on the same afternoon the bailiff informed the court that the jury requested the statement of the defendant given to the police officers shortly following his arrest. This statement had been reduced to writing, and the police officers testified by referring to it but the statement itself was not filed as an exhibit. The jury was thereupon brought into court and was informed by the court that said statement was not an exhibit in the case. A juror then requested that the testimony of the officers as to the contents of said statement be read. This was done, and the jury returned to the jury-room for further deliberations. A verdict was not reached that night. At eleven forty-eight on the following morning the jury was brought into court and the court inquired whether a verdict had been found. A negative answer was given. The record then shows the following:

''The Court: Is there any question of law that is bothering you, that the court can be of assistance to you on?

''The Juror: The question is, your Honor, can we bring in a verdict without recommending as to the punishment?

''The Court: Yes, you can bring in a verdict without recommending the punishment, but that casts the burden and duty upon the court of imposing a sentence of death. The court then has no discretion of any kind except to impose judgment that the defendant suffer death. The jury has the discretion of fixing the punishment in a first degree

murder case at either life imprisonment or at death. Have I made myself clear, ladies and gentlemen?

"The Juror: I wonder if we could have another blank that has nothing on it here about fixing the punishment? I understand we are not to erase anything on this form.

"The Court: I can ask the clerk to prepare a form of verdict which will not carry any recommendation whatever. You may use it, if you find that that is the verdict you want to arrive at.

"Now, I am handing you another form of verdict, ladies and gentlemen of the jury, which you may use if you find the defendant guilty at all of anything, as follows: With the title of the court and cause, 'We, the jury in the above entitled action, find the defendant guilty of murder as charged in the information, and find it to be murder in the first degree.' If such be your verdict, you will cause it to be signed and dated by your foreman and return it into court.

"May I add one more statement to you so that there will be no error or misunderstanding about the law on the subject: You have the right, ladies and gentlemen of the jury, to determine the punishment, if you find the defendant guilty of murder in the first degree at all. If you find a verdict of guilty of the first degree, you have the right to fix the punishment at either life imprisonment or at death. So forms for each of those verdicts have been handed to you. If you fail to fix the punishment in your verdict, and you merely find the defendant guilty of murder in the first degree as charged in the indictment, it then becomes the duty of the court, and it has no discretion but to impose a judgment of death."

At 2:25 P. M. of the same day the jury returned the verdict in the language above quoted. The jury was polled, the verdict recorded and reread and the trial on the plea of "not guilty by reason of insanity" was set for a later date.

On the foregoing, counsel for the defendant states: "It is apparent from the above record of the proceedings in this case that the jury was seeking to avoid the responsibility of fixing the penalty. It is clear that there was a disagreement in the jury as to the penalty that should be imposed. . . .

The evidence in this case as to the guilt of appellant of murder in the first degree (assuming, of course, that he was sane, which is contrary to the opinion of counsel for appellant), is so strong, so positive, and so certain, that it would be stretching the imagination to the breaking point to assume that the jury was disagreeing as to the guilt of the appellant of murder in the first degree. Therefore, we think it is very logical and reasonable to assume that the jury had not agreed and could not agree as to the punishment or penalty."

Counsel for the defendant singles out the statement of the court in answer to the question of the juror: "Yes, you can bring in a verdict without recommending the punishment, but that casts the burden and duty upon the court of imposing the sentence of death," as indicating that the jury understood that the court was withholding from the jury the duty to fix the penalty. We cannot accord to this statement the significance sought to be attributed to it, especially in the light of the context and the other instructions wherein the court was at pains to advise the jury at length in certain and appropriate language, and in several instances, that if the jury should find the defendant guilty of murder of the first degree it would then be their duty to fix the penalty, and that if the verdict be silent as to the penalty the duty would be cast upon the court to impose the penalty of death. It may be assumed that the controversy among the jurors in the jury-room involved the question of the penalty to be imposed, but it is clear from the record that the jury knew what ·it was doing and the consequences thereof when it returned a verdict silent as to the penalty. (See *People* v. *Hall*, 199 Cal. 451 [249 Pac. 859]; *People* v. *Bollinger*, 196 Cal. 191 [237 Pac. 25]; *People* v. *Perry*, 195 Cal. 623 [234 Pac. 890].) There is no possible basis for the claim that in returning the verdict the action of the jury as to the penalty imposed was not unanimous. The case is not at all like the case of *People* v. *Hall, supra,* relied upon by the defendant. There the verdict showed on its face that the jury had not come to a unanimous agreement as to the penalty. Here, the verdict returned under full, fair and impartial instructions from the court shows by its language that the matter of the

penalty was acted upon by the jury and the record otherwise discloses that its action thereon was unanimous.

The judgment and order are affirmed.

Curtis, J., Langdon, J., Thompson, J., Seawell, J., Preston, J., and Waste, C. J., concurred.